IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, Plaintiff )<br><br>v. )<br><br>CHICAGO TITLE INSURANCE COMPANY and WESTERN CAPITAL PARTNERS LLC )<br><br>Defendants | )<br>)<br>)<br>)<br>)  Case Number:  09 CV 7063<br>)<br>)  Judge: Matthew F. Kennelly<br>)  Magistrate: Jeffery Cole<br>)  Defendant Demands Trial By<br>)  Jury<br>)<br>)<br>)<br>)<br>) |

**WESTERN CAPITAL PARTNERS LLC'S CROSS-CLAIM AGAINST CHICAGO TITLE INSURANCE COMPANY**

Defendant and Cross-Claimant WESTERN CAPITAL PARTNERS LLC, a Colorado limited liability company ("WCP"), through its attorneys Hatch Jacobs LLC, hereby submits its Cross-Claims against Defendant Chicago Title Insurance Company ("Defendant"), and states as follows:

**PARTIES**

1.      Cross-Claimant WCP is a limited liability company duly organized under the laws of the State of Colorado and has its principal place of business located therein.

2.      Upon information and belief, Defendant is organized as a corporation under the laws of the State of Nebraska and has its principal place of business in a state other than Colorado.

**VENUE**

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District

Court for the Northern District of Illinois because a substantial part of the events or omissions giving rise to the claims made herein occurred in this District.

## STATEMENT OF JURISDICTION

4.      Pursuant to 28 U.S.C. § 1332(a), this Court maintains original jurisdiction as the matter in controversy exceeds $75,000.00 and there is diversity of citizenship between the parties.

## GENERAL ALLEGATIONS

5.      In or around September 2006, WCP purchased a title insurance policy from Defendant (the "Policy") to insure the validity, enforceability and priority of certain mortgages that secure loans made by WCP relative to the purchase of several parcels of real property located in the Chicago, Illinois area and which are specifically referenced in the Policy (hereinafter referred to as the "Insured Mortgages").

6.      A true and correct copy of the Policy is attached hereto as Exhibit A.

7.      In and around August 2007, WCP filed several foreclosure actions in the Circuit Court of Cook County to foreclose upon several of the Insured Mortgages (hereinafter referred to as the "Foreclosure Actions").

8.      Subsequently, WCP was sued by several parties who claimed to have interests in the properties that were the subject of the Policy.

9.      The litigants in that case initiated litigation in the Circuit Court of Cook County, Chancery Division, Case No. 08 CH 06055 (hereinafter referred to as the "Ridgeland Litigation").

10.     The Amended Complaint in the Ridgeland Litigation alleged a total of fourteen causes of action against the various named defendants therein.

11.     Of those fourteen causes of action, nine were against WCP.

12.     Four of those nine causes of action against WCP specifically request relief in the form of invalidating or subordinating WCP's rights in the Insured Mortgages.

13.     The remaining causes of action allege that WCP committed fraud, breached its contractual obligations, violated Illinois usury laws and violated consumer protection laws, among other things.[1]

14.     In February of 2008, WCP submitted a title insurance claim to Defendant requesting that Defendant fulfill its duty to defend WCP in the Ridgeland Litigation pursuant to Defendant's obligations under the Policy.

15.     In June of 2008, WCP supplemented its claim against Defendant by putting Defendant on notice of various additional challenges to the Insured Mortgages in the Foreclosure Actions.

16.     Despite repeated inquiries by WCP regarding the status of its claims, Defendant did not respond to those inquiries until August 15, 2008, when it issued a reservation of rights letter to WCP stating that it would only pay WCP's costs in defending itself in the Ridgeland Litigation and that it would only pay WCP's costs relative to the four causes of action which directly attacked the validity of the Insured Mortgages.

17.     In its reservation of rights letter, Defendant referenced the challenges made to the Insured Mortgages in the Foreclosure Actions but made no representations as to its duty to defend relative thereto.

18.     Both the Ridgeland Litigation and Foreclosure Actions will hereafter

---

[1] Since the Amended Complaint was filed in the Ridgeland Litigation, the court in that case has dismissed most of the causes of action alleged against WCP. However, the Ridgeland Litigation is currently postured in such a way that certain vexatious litigants are threatening to revive many of the causes of action that were previously dismissed and therefore WCP may require continuing coverage under the Policy despite the previous dismissal of the causes of

collectively be referred to as the "Underlying Litigation".

19.     Prior to August 15, 2008, WCP necessarily incurred significant litigation costs in defending itself in the Ridgeland Litigation and protecting the validity of its Insured Mortgages in the Foreclosure Action.

20.     During that time, Defendant was aware that WCP was incurring such costs.

21.     When WCP received the reservation of rights letter, it promptly submitted invoices of its attorneys' fees incurred in the Underlying Litigation to Defendant.

22.     When WCP initially submitted its claims to Defendant it submitted invoices to Defendant for reimburse of legal defense costs, made repeated requests of Defendant as to the status of the claims, and provided all the documents and information Defendant had previously requested.

23.     However, Defendant unreasonably failed to timely and fully reimburse WCP for the fees and costs it incurred, and Defendant unreasonably failed to timely and fully tender payment of such fees and costs to WCP's counsel in Illinois who was representing WCP in the Underlying Litigation.

24.     Due to this inaction on Defendant's part, WCP began sending written correspondence to Defendant demanding that it tender payment of WCP's defense costs.

25.     It was not until on or about October 30, 2008, that Defendant represented that it would only pay 25% of a limited number of WCP's costs.

26.     After several rounds of correspondence between WCP and Defendant regarding this 25% offer, on November 10, 2008, Defendant represented that it would pay only 44% of a limited number of WCP's defense costs and that it would immediately tender payment of outstanding invoices to WCP's Illinois counsel and that it would directly

action in the Amended Complaint.

reimburse WCP for defense expenses that WCP has paid to its Illinois counsel.

27.     Subsequent to receiving Defendant's offer to pay 44% of a limited number of WCP's defense costs in the Underlying Litigation, WCP has, on numerous occasions, requested that Defendant reconsider this position and insisted that Defendant's duty to defend requires Defendant to cover all of WCP's defense costs in the Ridgeland Litigation and to cover those costs associated with protecting the validity of the Insured Mortgages from challenges in the Foreclosure Actions.

28.     Despite WCP's numerous requests, and its compliance with Defendant's duplicative document requests, Defendant refused to discuss the matter with WCP, has unreasonably delayed in responding to WCP's correspondence regarding the dispute, has forced WCP to initiate this litigation and has failed to tender appropriate payment toward WCP's defense costs.

29.     To date, WCP has only directly received approximately $15,000 from Defendant in reimbursement for defense costs directly incurred by WCP.

30.     Moreover, Defendant has only tendered reimbursement of WCP's legal defense costs to WCP's counsel in Illinois in an amount that is only a small percentage of what Defendant is required to pay under the Policy.

31.     As a result, WCP has paid significant attorneys' fees and costs to defend itself in the Underlying Litigation, the exact amount of which shall be proven at trial.

32.     These attorneys' fees and costs are all expenses for which Defendant has a duty to reimburse WCP under the Policy.

33.     In addition, WCP remains liable for significant attorneys' fees and costs incurred in the Underlying Litigation, the exact amount of which shall be proven at trial.

34.     Defendant has a duty to pay these attorneys' fees and costs on WCP's behalf pursuant to the Policy.

35.     Defendant's conduct toward WCP as described above and as to be proven at trial has been unreasonable and vexatious.

36.     In addition, the following list documents a non-exhaustive account of Defendant's unreasonable and vexatious conduct in handling WCP's claim:

    a. Defendant took more than six months to initially respond to WCP's title claims, despite WCP providing Defendant with all requested documents and WCP's repeated inquiries within those six months as to the status of the claims;

    b. Defendant's initial offer to pay 25% of a limited number of covered defense costs was arbitrary and was not based on any analysis of the Underlying Litigation;

    c. Defendant insisted that WCP commit to reducing significantly the amount of its claim against Defendant for covered attorneys' fees and costs as a pre-condition to mediating the present dispute;

    d. Later, Defendant insisted on paying only 44% of covered defense fees and costs even though its own approved counsel who is representing WCP in the Underlying Litigation has stated that at least 85% of his fees are related to ensuring the validity of the insured mortgages in the Underlying Litigation;

    e. Defendant refused to communicate directly with WCP regarding the dispute but has insisted that WCP correspond with it only through

WCP's outside counsel;

f.  In November of 2008, Defendant made certain inquiries and document requests related to the Underlying Litigation.  However, WCP made its claims in the Underlying Litigation in February and June of 2008 and provided to Defendant, at that time, all the documents and information that Defendant requested in November 2008.  In addition, the information requested by Defendant in November was so basic to understanding the Underlying Litigation and Defendant's obligations relative thereto, that it is apparent that Defendant failed to timely execute its duty to investigate WCP's title insurance claims.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201 and FRCP 57)

37.     WCP incorporates the foregoing allegations as though fully set forth herein.

38.     An actual controversy exists between WCP and Defendant regarding Defendant's obligations under the Policy and applicable law to pay for WCP's defense costs in the Ridgeland Litigation and the Foreclosure Action.

39.     WCP is unwilling to resolve this controversy short of litigation.

40.     WCP has incurred and will continue to incur substantial obligations relative to paying attorneys' fees and other costs to preserve its rights in the Underlying Litigation.

41.     Therefore WCP requests pursuant to 28 U.SC. § 2201 that this Court declare WCP's rights and Defendant's obligations under the Policy as it relates to the Underlying Litigation.

42.     WCP further requests that this Court determine and declare such rights on an expedited basis pursuant to Federal Rule of Civil Procedure 57.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

43.    WCP incorporates the foregoing allegations as though fully set forth herein.

44.    The Policy constitutes a valid and binding contract between WCP and Defendant.

45.    WCP has performed all conditions precedent that are required of it under the Policy to require Defendant to perform its obligations thereunder.

46.    Despite WCP's performance of all conditions precedent that are required of it under the Policy, Defendant has failed and refused to perform its obligations thereunder.

47.    As a result of Defendant failing to perform its obligations under the Policy, WCP has been damaged in an amount to be proven at trial, and in an amount in excess of $75,000.

## THIRD CLAIM FOR RELIEF
### (Unreasonable and Vexatious Delay or Refusal to Provide Coverage; 215 I.L.C.S. § 5/155)

48.    WCP incorporates the foregoing allegations as though fully set forth herein.

49.    Defendant's conduct toward WCP in denying and delaying coverage under the Policy as alleged herein and to be proven at trial has been unreasonable and vexatious pursuant to 215 I.L.C.S. § 5/155.

50.    As a result of Defendant's unreasonable and vexatious conduct, WCP has suffered damages as described herein and to be proven at trial, and in an amount in excess of $75,000.

51.    WCP therefore requests that this Court award WCP its reasonable attorneys' fees, other costs, and appropriate penalties under 215 I.L.C.S. § 5/155(1)(a)-(c).

## FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty)

52.    WCP incorporates the foregoing allegations as though fully set forth herein.

53.    At all times relevant, Defendant was acting as a fiduciary to WCP with respect to its duties to WCP under the Policy.

54.    Through Defendant's conduct as alleged herein, Defendant breached its fiduciary duty to WCP.

55.    As a result of Defendant breaching its fiduciary duty to WCP, WCP has suffered damages in an amount to be proven at trial, and in an amount in excess of $75,000.

WHEREFORE, WCP prays for the following:

1.    A Judgment from this Court declaring that Defendant is obligated to pay for all of WCP's past and future defense costs incurred in the Ridgeland Litigation, in an amount to be proven at trial;

2.    A Judgment from this Court declaring that WCP is obligated to pay for all attorneys' fees and costs incurred by WCP in the Foreclosure Actions relative to protecting the validity and priority of the Insured Mortgages, in an amount to be proven at trial;

3.    An Order directing Defendant to immediately tender payment to WCP and/or its counsel for all such amounts that this Court deems it is obligated to pay under the Policy;

4.    A Judgment awarding WCP its damages, pre-judgment interest, costs, attorneys' fees against Defendant for Defendant's breach of its obligations under the Policy;

5.    A Judgment awarding WCP its court costs, attorneys' fees and penalties under 215 I.L.C.S. § 5/155 for Defendant unreasonably and vexatiously denying and

delaying WCP's claims under the Policy;

6.     A Judgment awarding WCP its damages, pre-judgment interest, costs and attorneys' fees against Defendant for Defendant breaching the fiduciary duty that it owes to WCP under the Policy;

7.     All other relief this Court deems appropriate.

<u>WESTERN CAPITAL PARTNERS LLC REQUESTS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE</u>.

Dated this 22nd day of February, 2010

Respectfully Submitted,

HATCH JACOBS LLC

*/s/ Christopher J. Conant*
Christopher J. Conant
Colorado Bar No. 40269
Admitted *Pro Hac Vice*
950 17th Street, Suite 1700
Denver, Colorado 80202
(303) 298-1800
*Attorneys for Western Capital*
*Partners LLC*

## CERTIFICATE OF SERVICE

This is to verify that on the 22nd day of February, 2010, a copy of the foregoing **WESTERN CAPITAL PARTNERS LLC'S REPLY TO CHICAGO TITLE INSURANCE COMPANY'S CROSS-CLAIM** was mailed via first class mail, postage prepaid, to the following persons or entities who may be entitled to notice and also via ECF Filing:

Thomas F. Geselbracht
Michael C Kasdin
DLA Piper US LLP IL
203 North LaSalle Street
20th Floor
Chicago, IL 60601

Richard M. Waris
Pretzel & Stouffer, Chtd.
One South Wacker Drive
Suite 2500
Chicago, IL 60606-4673
(312) 346-1973

*/s/ Renae L. Friedrichs*