**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09 C 7063** |
| | ) | |
| **CHICAGO TITLE INSURANCE COMPANY** | ) | |
| **and WESTERN CAPITAL PARTNERS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY,  District Judge:

Philadelphia Insurance Company and Chicago Title Insurance Company both

provided insurance to Western Capital Partners, LLC.  Western Capital was sued and

asked Chicago Title to defend the lawsuit.  Chicago Title agreed to defend four counts

of the six-count lawsuit.  It declined to defend the other two pursuant to a term in the

insurance policy that stated Chicago Title was only obligated to defend those causes of

action that were covered by the policy.  Western Capital then requested that

Philadelphia defend the remaining two claims in the lawsuit.  Philadelphia objected,

claiming its policy was excess to Chicago Title's policy, and arguing that Chicago Title is

obligated under Illinois law to defend the entire lawsuit.

Philadelphia has filed suit seeking a declaratory judgment that Chicago Title's

policy is the primary policy for the suit against Western Capital and that Chicago Title is

obligated to defend the entire suit.  Philadelphia has moved for judgment on the

pleadings.  For the reasons stated below, the Court denies the motion.

### Facts

In February 2008, several real estate developers filed a six-count lawsuit against

Western Capital over a foreclosure action it had commenced against them (the

Ridgeland suit).  Western Capital is insured by both Philadelphia and Chicago Title.

When the Ridgeland suit was filed, Western Capital contacted Philadelphia and asked it

to defend the suit using an attorney Western Capital had already selected.

Philadelphia replied by a letter in which it acknowledged an obligation to defend the

case but stated that it would allow Western Capital to use its chosen attorney only at

rates approved by Philadelphia.

After receiving this letter from Philadelphia, Western Capital contacted its other

insurer, Chicago Title, and asked it to defend the lawsuit instead of Philadelphia.

Chicago Title acknowledged a defense obligation for four of the counts in the Ridgeland

suit.  It stated that the other two counts were not covered by its policy and therefore it

would not defend them, pursuant to a policy term limiting its defense obligation to

claims that are covered by the policy.  In November 2008, Western Capital once again

contacted Philadelphia to ask Philadelphia defend the two remaining counts.

Philadelphia responded with a letter advising Western Capital that it believed the

Chicago Title policy was the primary policy for the Ridgeland suit.  Philadelphia

therefore reserved its right to withdraw the defense it had offered in its first letter.  On

December 15, 2008, Philadelphia sent another letter informing Western Capital that it

had concluded its policy was excess to the Chicago Title policy and therefore would not

2

provide Western Capital a defense.   On October 2, 2009, Philadelphia filed a suit in the Circuit Court of Cook County, Illinois, seeking a declaratory judgment that the Chicago Title policy provides primary coverage to Western Capital for the Ridgeland lawsuit, that Philadelphia's policy provides excess coverage, and that Philadelphia has no duty or obligation to provide a defense to Western Capital in the suit.  On November 10, 2009, the case was removed to this Court based on diversity of citizenship.

On March 10, 2010, Philadelphia filed a motion for judgment on the pleadings. In its brief in support of the motion, Philadelphia argues that because Chicago Title has admitted it has a duty to defend four of the counts contained in the Ridgeland suit, it is obligated to provide a defense for the entire suit.  In the alternative, Philadelphia argues that the term of the Chicago Title policy that disclaims a duty to defend non-covered claims is ambiguous and therefore, under Illinois law, should be construed in favor of Western Capital such that Chicago Title is obligated to defend all claims.  Philadelphia seeks a declaratory judgment that the Chicago Title policy provides primary coverage to Western Capital for the Ridgeland litigation and that Chicago Title is obligated to pay all of Western Capital's defense costs for that litigation.  For the reasons stated below, the Court denies Philadelphia's motion.

## Discussion

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c).  A party is entitled to judgment on the pleadings when it "demonstrates that there are no material issues of fact to be resolved."  *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).  In deciding a motion for judgment on the

pleadings, a court construes the facts alleged in the complaint in the light most favorable to the non-moving party. *R.J. Corman Derailment Servs., L.L.C. v. Int'l Union, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003).

## A.    Scope of Chicago Title's defense obligation

Chicago Title admits a defense obligation for four of the counts in the six-count Ridgeland suit but maintains that the other two counts contain claims not covered by its policy.  Because Chicago Title's insurance policy contains a term saying it will not defend causes of action that are not covered by the policy, Chicago Title argues it is not obligated to provide a defense on the remaining two counts.

Philadelphia argues that Chicago Title's position is contrary to Illinois law. Philadelphia argues that if even one count in a complaint falls within the potential coverage of an insurance policy, the insurer has a duty to defend the entire complaint. Pl.'s Mem. in Supp. of Mot. for J. on Pleadings at 3.  Because Chicago Title admits it must defend four counts, Philadelphia argues, Chicago Title must defend them all. Chicago Title argues that its policy unambiguously states that it will not provide defense or pay any legal expenses for any causes of action that allege matters not insured by the policy.  Therefore, it argues, it need not defend those counts that are not covered by the policy.

The relevant portion of the Chicago Title policy states:

Upon written request by the insured . . . [Chicago Title], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. . . . [Chicago Title] will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

4

Pl.'s Mem. in Supp. of J. on Pleadings at 4.  Philadelphia argues that under Illinois law,

Chicago Title has a duty to defend the entire Ridgeland suit, despite this language in

the policy.  In support, Philadelphia cites the Illinois Supreme Court's decision in

*Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24, 28 (1976).  In

*Maryland Casualty*, the Illinois Supreme Court held that "the duty to defend extends to

cases where the complaint alleges several causes of action or theories of recovery

against an insured, one of which is within the coverage of a policy while the others may

not be."  *Id.*  Illinois courts have often found that an insurance company's duty to defend

is broader than its duty to indemnify, and extends to all causes of action in a complaint.

*See, e.g., Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363, 860

N.E.2d 307, 314-15 (2006); *Bedoya v. Ill. Founders Ins. Co.*, 293 Ill. App. 3d 668, 675,

688 N.E.2d 752, 761 (1997).

There is no question that under Illinois law, at least absent contractual language

to the contrary, an insurer must defend all claims in a complaint if its policy covers at

least one of the claims.  Philadelphia cites no case, however, in which a court has held

that an insurance company must defend all causes of action when, as in this case, the

insurance contract expressly limits the duty to defend to those causes of action that are

covered by the policy.

Illinois case law suggests that parties may contract for insurance terms that

deviate from the default rule established in *Maryland Casualty*.  In *Zurich Insurance Co.*

*v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 514 N.E.2d 150 (1987), the insurance

contract at issue included a clause that stated:

> the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . but the company shall not be obligated . . . to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Zurich sought to withdraw from defending the insured after the limits of its liability had been reached. The court noted the general rule from *Maryland Casualty* but concluded it did not apply to Zurich because the terms of the insurance contract "clearly" limited Zurich's duty to defend. *Id*. at 50, 53, 514 N.E.2d at 162-63.

The Illinois Supreme Court has held in other cases that parties to an insurance policy may contract away from the default rules governing insurance contracts. In *General Agents Insurance Co. of America v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 828 N.E.2d 1092 (2005), the insurer, Gainsco, was asked to defend the insured, Midwest Sporting Goods, in a lawsuit brought by the City of Chicago. The lawsuit alleged that Midwest created a public nuisance by selling guns to inappropriate parties. Gainsco denied that the lawsuit was covered by its policy. In a letter to Midwest Sporting Goods, Gainsco agreed to defend the suit, but said it did so "without waiving any of its rights and defenses, including the right to recoup any defense costs paid in the event that it is determined that the Company does not owe the Insured a defense in this matter." *Id*. at 148, 828 N.E.2d at 1094. A court in Cook County eventually determined that Gainsco had no duty to defend Midwest in the underlying litigation, and Gainsco moved for recovery of defense costs.

The Illinois Supreme Court held that Gainsco was not entitled to recover defense costs because the insurance policy between Midwest and Gainsco contained no provision allowing for recovery of such costs. The court held that the rule in Illinois is

that defense costs are not recoverable "absent an express provision to that effect in the insurance contract between the parties." This holding further supports Chicago Title's argument that parties may contract to have their insurance policies governed by terms other than the default rules established by Illinois law.

In this case, the contract between Chicago Title and Western Capital includes a term stating that "[Chicago Title] will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy." This contractual language at least arguably overcomes the general rule that the duty to defend extends to all actions if at least one is covered by the policy. Philadelphia is therefore not entitled to a judgment on the pleadings regarding Chicago Title's obligation to defend Western Capital on all counts in the Ridgeland litigation.

**B.    Ambiguity in the Chicago Title policy**

Philadelphia also argues that even if the duty to defend can be limited by contract, Chicago Title is still obligated to defend the entire Ridgeland action because the policy language limiting its duty to defend is ambiguous. Philadelphia argues that the phrase "cause of action" is not defined in the policy between Chicago Title and Western Capital. It contends there is more than one reasonable interpretation of the phrase "cause of action" and therefore that term of the policy is ambiguous.

In Illinois, "if the words used in [an] insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 372, 875 N.E.2d 1082, 1090 (2007). A contract is not ambiguous, however,

7

merely because the parties disagree on its meaning.  *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 214 (2004).  A court should consider only reasonable interpretations of the policy language and should not "strain to find an ambiguity where none exists."  *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005).

Philadelphia argues that without a definition in the policy, the term "cause of action" is "at best, reasonably susceptible to more than one meaning."  Pl.'s Mem. in Support of J. on Pleadings at 8.  It argues that "cause of action" could be interpreted to mean "individual claim," as Chicago Title contends, but could also mean "lawsuit." Philadelphia cites Black's Law Dictionary, which defines "cause of action" as:

> 1.  A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles on person to obtain a remedy in court from another person; claim;
>
> 2.  A legal theory of a lawsuit . . .
>
> 3.  Loosely, a lawsuit.

Black's Law Dictionary 251 (9th ed. 2009).

Philadelphia argues that the Chicago Title policy "is equally susceptible to Philadelphia's interpretation of the term "cause of action" as it is to Chicago Title's." Pl.'s Reply Mem. in Supp. of J. on Pleadings at 6.  Philadelphia contends that the availability of two potential definitions of "cause of action" demonstrates that the term as used in the Chicago Title policy is ambiguous.  Therefore, Philadelphia argues, the term should be construed against Chicago Title to denote the broader "lawsuit" rather than the narrower "claim," thus requiring Chicago Title to defend the full Ridgeland suit.

The primary objective in the construction of an insurance policy is to determine and give effect to the intent of the parties, as expressed by the agreement.  *Rohe v. CNA Ins. Co.*, 312 Ill. App. 3d 123, 127, 726 N.E.2d 38, 40 (2000).  To interpret an insurance policy, a court must "construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1078 (1993).  If the policy is clear and unambiguous, a court must enforce the policy according to its terms as written.  *Menke v. Country Mut. Ins. Co.*, 78 Ill.2d 420, 423-24, 401 N.E.2d 539, 541 (1980).  A policy term is not ambiguous simply because it is not defined within the policy or because the parties can suggest alternative possibilities for its meaning.  *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 529, 655 N.E.2d 842, 846 (1995).

Chicago Title argues that read as a whole, the clause of the policy limiting its defense obligation is unambiguous and clearly indicates that "cause of action" means individual claims, not lawsuits as a whole.  The policy states that Chicago Title will "provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy."  Pl.'s Mem. in Supp. of J. on Pleadings at 4.  Read as a whole, Chicago Title argues, it is clear that "causes of action" are the same as "claims," and both are component parts of the broader concept of "litigation."  Chicago Title contends it has

9

agreed to defend any lawsuit which includes a "claim" adverse to the insured, but only as to those "causes of action" that are actually insured by the policy.

The Court agrees that read as a whole and in context, the clause limiting Chicago Title's defense obligation uses the phrase "cause of action" to mean individual claims, not entire lawsuits.   Philadelphia's proposed meaning of "lawsuit" would render the limitation on the duty to defend superfluous.  The contract already indicates that Chicago Title will only defend lawsuits that include a claim covered by the policy when it states it will defend "in litigation in which any third party asserts a claim adverse to the title or interest as insured."  Pl.'s Mem. in Supp. of J. on Pleadings at 4.  Using Philadelphia's proposed construction would make the subsequent sentence – "[Chicago Title] will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy" – duplicative of what is already stated earlier in that contract term.  It is a basic tenet of contract construction that a court should not construe a contract in a way that would render other parts of it superfluous or meaningless.  *See, e.g., Gray v. Nat'l Restoration Sys., Inc.*, 354 Ill. App. 3d 345, 370-71, 820 N.E.2d 943, 965 (2004).  The Court therefore declines to grant Philadelphia's motion for judgment on the pleadings on the ground that the term "cause of action" is ambiguous.

## Conclusion

For the reasons stated above, the Court denies Philadelphia's motion for judgment on the pleadings [docket no. 32]. The case is set for a status hearing on July

28, 2010 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date: July 13, 2010