**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILADELPHIA INDEMNITY INS. CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09 C 7063** |
| | ) | |
| **CHICAGO TITLE INS. CO. and** | ) | |
| **WESTERN CAPITAL PARTNERS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Defendant Western Capital Partners, LLC and plaintiff Philadelphia Indemnity Insurance Co. have moved to strike two affirmative defenses recently asserted by defendant Chicago Title Insurance Co. in response to Western Capital's crossclaim. The first is a defense of setoff. The second is a defense based on Western Capital's alleged breach of its duty of cooperation imposed via the insurance policy it purchased from Chicago Title. Chicago Title asserted these defenses primarily because Philadelphia and Western Capital have entered into a settlement agreement resolving all claims between them concerning the underlying *Ridgeland* litigation. Familiarity with the Court's prior decisions in this case is assumed.

In support of its setoff defense (affirmative defense thirteen), Chicago Title argues that, via the settlement agreement, Western Capital has already received a portion of the funds it seeks in this litigation and that anything Chicago Title is ultimately required to pay Western Capital should be reduced by that amount. Chicago Title

argues that the acceptable way for it to be held responsible for the entire amount despite the fact that Philadelphia has already paid some of the money would be Philadelphia to sue Chicago Title in subrogation as an excess insurer. Chicago Title says that Philadelphia settled with Western Capital to remove itself from the equation rather than going through the procedures required of an excess insurer and that Chicago Title's role as primary insurer does not render it liable for the amounts Western Capital already received from Philadelphia.

Both parties focus on two Illinois cases: *New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London*, 34 Ill. 2d 424, 216 N.E.2d 665 (1966), and *Aetna Cas. & Surety Co. v. Coronet Ins. Co.*, 44 Ill. App. 3d 744, 358 N.E.2d 914 (1976). In both of these cases, an excess insurer provided for an insured's defense costs after a primary insurer refused the tender of the insured's defense, and the court allowed the excess insurer to sue the primary insurer to recoup the amount it had paid. Chicago Title argues that the situation in this case differs in four ways: Philadelphia never accepted the tender and its payments therefore were not insurance payments; Chicago Title didn't abandon Western Capital like the primary insurers in the cases; Philadelphia has no right to pursue this amount in subrogation; and Chicago Title was not the primary insurer by design.

Chicago Title is correct that the two cases deal with a litigation context that is different from the one in this case. The cases do not indicate that the features Chicago Title identifies were crucial to the holding as Chicago Title contends, but they do provide guidance about the rights and obligations of primary and excess insurers in subrogation actions. This, however, is not a subrogation action, nor do the present motions to strike

2

involve a defense by Chicago Title to any claim by Philadelphia (Philadelphia's arguments in its reply brief that it is entitled to pursue an equitable subrogation claim have no bearing on this point).

The issue of whether Chicago Title's financial obligations to Western Capital are reduced by the amounts that Western Capital has already received may be related to the issue of when an excess insurer may recover from a primary insurer, but the two issues are not the same. Any monetary claim that Philadelphia might assert against Chicago Title is not involved in Western Capital's crossclaim. Chicago Title contends in its affirmative defense not that it is not liable to Philadelphia but rather that its obligations to Western Capital, Chicago Title's insured, are reduced by amounts that the insured received from an excess insurer. Chicago Title has offered no legal authority to support the proposition that even though it is the primary insurer, it has a right of setoff vis-à-vis its own insured. The Court strikes affirmative defense thirteen.

In support of the other affirmative defense that is at issue (affirmative defense fourteen), Chicago Title argues that by entering into the settlement agreement with Philadelphia, Western Capital breached a clause in its insurance policy with Chicago Title that requires Western Capital to "give [Chicago Title] all reasonable aid" in litigation covered by the policy. The clause further states that if Chicago Title is "prejudiced by the failure of the insured to furnish the required cooperation," Chicago Title's obligations under the policy terminate. Philadelphia and Western Capital argue that the settlement agreement only concerns the case before this Court, not the underlying litigation that was covered by Chicago Title's insurance policy. They argue that the cooperation clause, by contrast, concerns only Western Capital's obligations in the context of the

3

underlying *Ridgeland* litigation.

Chicago Title does not really dispute that to be cognizable under the cooperation clause, any prejudice must involve the *Ridgeland* litigation.  It argues that the settlement has prejudiced it in the *Ridgeland* case in two ways.  First, because the settlement agreement supposedly "deprived [Chicago Title of] the opportunity to resolve the litigation at the April 2011 settlement conference, [Chicago Title] has been subject to an additional 13 months of alleged interest and finance charges."  Chicago Title's Resp. at 11.  Chicago Title also claims that it was prevented from terminating Schiff Hardin as counsel in the underlying lawsuit, which could have saved Chicago Title money.

Even if one assumes for purposes of discussion that these issues had a sufficient connection to the underlying *Ridgeland* lawsuit to be cognizable – which is doubtful – they cannot be attributed to any breach by Western Capital of its contractual duty to cooperate.  The clause at issue states:

> Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title of the estate or interest or the lien of the insured mortgage, as insured.

Philadelphia's Reply at 9.

The clear purpose of this provision is to require Western Capital to provide everything required of it in the *Ridgeland* litigation.  It is reasonable for an insurer to expect that an insured will assist with defending a claim against made against the insured by being willing to "provide relevant records and make a reasonable reconstruction of the events surrounding a claim; attend depositions and other legal

4

proceedings; provide truthful testimony at trial; make reasonable efforts to obtain the cooperation of acquaintances with helpful knowledge; sign any papers required in connection with the claim; and attend the trial or hearing on the matter." *Employers Ins. of Wausau v. James McHugh Const. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998). But neither the language of the cooperation clause nor the nature of the requirements that *Employers Insurance of Wausau* indicates that such clauses impose concern an insured's dealings with respect to other insurers, its receipt of money from other sources, or the handling or allocation of defense costs. The insurance policy requires Western Capital to take the steps required of a defendant in a lawsuit that is being defended by its insurer, not to take every possible action that might favorably impact the insurer's financial obligations or to avoid any action that might increase them. *Employers Insurance of Wausau* clearly indicates that this is what a cooperation clause entails, and Chicago Title provides no legal support for its proposed reading of the provision. The Court therefore strikes affirmative defense fourteen.

### Conclusion

For the reasons stated above, the Court grants the motions by defendant Western Capital and plaintiff Philadelphia Indemnity to strike defendant Chicago Title's affirmative defenses thirteen and fourteen [docket nos. 261 & 263]. The Court also directs Chicago Title to file a written response to Philadelphia Indemnity's motion for monetary judgment (which was filed on May 29, 2012) by no later than 4:30 p.m. on June 5, 2012. Philadelphia Indemnity may file a written reply by no later than 4:30 p.m.

on June 6, 2012.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date:  June 2, 2012