IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INS. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09 C 7063 |
| ) | |
| CHICAGO TITLE INS. CO. and ) | |
| WESTERN CAPITAL PARTNERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Western Capital and Philadelphia have each filed motions asking the Court to enter judgment in their favor without holding a trial. Western Capital seeks summary judgment on its claims for declaratory judgment regarding Chicago Title's defense obligations and for breach of contract, and Philadelphia has moved for the entry of a monetary judgment in its favor.

In addition to opposing both of these motions, Chicago Title has asked the Court to alter or amend portions of its May 11, 2012 order. *See Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, No. 09 C 7063, 2012 WL 1658291 (N.D. Ill. May 11, 2012). Chicago Title claims that the settlement agreement between Philadelphia and Western Capital rendered moot Philadelphia's claim for declaratory judgment, on which the Court previously granted summary judgment. Chicago Title also alleges that some of the claims in the underlying lawsuit were never been re-pled, which if true might affect what fees from that litigation Chicago Title is obliged to pay.

The Court assumes familiarity with its prior decisions in this case. For the reasons stated below, the Court grants Western Capital's motion in part and denies Philadelphia's and Chicago Title's motions.

## A. Philadelphia's claim

Philadelphia contends that it is entitled to, in effect, step into Western Capital's shoes and recover from Chicago Title the attorney's fees and expenses that Western Capital incurred in the underlying litigation that Philadelphia has paid or for which it has reimbursed Western Capital. Philadelphia argues that the entry of a monetary judgment is the natural corollary to the Court's decision granting summary judgment in Philadelphia's favor on its claim for a declaratory judgment that Chicago Title was required to defend Western Capital in the underlying litigation.

### 1. Amendment of Philadelphia's complaint

Chicago Title protests that Philadelphia has not sought monetary relief in its complaint and therefore cannot obtain it. Consequently, Philadelphia has sought leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add a claim for equitable subrogation. Chicago Title argues that Philadelphia is not entitled to add this claim so late in the litigation. Chicago Title contends that it will be prejudiced if the Court permits Philadelphia to amend because it will be unable to properly challenge Philadelphia's claim.

The Court concludes that Philadelphia is entitled to add the claim for damages. The claim does not involve arguments or subject matter that differ significantly from what Philadelphia (and, for that matter, Western Capital) have asserted throughout this

2

case. Moreover, Chicago Title has had the opportunity to challenge the claim in its response to Philadelphia's motion seeking a monetary judgment. It has asserted several substantive arguments regarding why the equitable subrogation claim is not viable, and the Court has considered these arguments. Chicago Title's contention that it has been deprived of the opportunity to assert additional defenses is unsupported by any specifics and is thoroughly unpersuasive.

### 2. Mootness

Chicago Title also argues that count one of Philadelphia's original complaint, in which Philadelphia sought a declaratory judgment that its policy was excess to Western Capital's policy, was rendered moot by the settlement agreement that Philadelphia and Western Capital concluded in March 2011. In this agreement, in consideration for a monetary payment by Philadelphia to Western Capital, Philadelphia and Western Capital agreed to certain parameters governing Philadelphia's defense obligations to Western Capital in the underlying lawsuit. According to Chicago Title, the settlement agreement fixed and resolved the scope of Philadelphia's obligations. Thus, Chicago Title argues, the settlement agreement likewise resolved any issue that Philadelphia might have had regarding Chicago Title's obligations – Philadelphia's obligations to Western Capital are fixed by the settlement and will not change irrespective of what Chicago Title's obligations to Western Capital turn out to be. Chicago Title argues that the Court should therefore vacate its earlier decision granting Philadelphia's request for a declaratory judgment regarding the scope of Chicago Title's defense obligations.

The Court disagrees with Chicago Title's contentions. First, to the extent that Chicago Title relies on *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir.

2004), for the premise that a settlement agreement of the sort at issue here renders moot a claim by an insured against its primary insurer, the contention is unavailing. In that case, Taco Bell sued its two liability insurers, Zurich and Continental, seeking a declaration that the companies had a duty to pay for its defense. Taco Bell settled with Continental. On summary judgment, the district court issued declaratory relief against both insurers and ordered both to pay for defense costs already insured. Continental argued on appeal that the district court should not have entered a judgment against it after it settled with Taco Bell. The Seventh Circuit agreed, noting that the settlement "ended [Continental's] dispute with Taco Bell, so there was no longer a controversy for the court to resolve." *Id.* at 1078. The case does not bear on whether a settlement between an insured and one insurer moots a claim between the insured and the other insurer, or a claim between the two insurers.

Second, as the Court will discuss below, Western Capital seeks summary judgment on essentially the same claim on which Philadelphia earlier sought summary judgment: a declaration regarding Chicago Title's obligations to Western Capital. This claim requires exactly the same analysis in which the Court engaged earlier with respect to Philadelphia's claim. Thus even if Philadelphia's original claim were moot, that would provide no basis to vacate the Court's earlier decision.

Third, the question of what rights Philadelphia has with respect to Chicago Title remains a live issue in this case. This is shown by Philadelphia's assertion of a claim for damages based on equitable subrogation. In that claim, Philadelphia contends that it took actions on behalf of Western Capital that it would not have taken but for Chicago Title's failure to live up to its obligations. Philadelphia argues that, as a result, it is

4

entitled to reimbursement from Chicago Title based on its breach of its contractual obligations to Western Capital.  The legal relationship between Philadelphia and Chicago Title as it relates to Western Capital, which depends on the scope of Chicago Title's obligations under its insurance policy, therefore presents a controversy sufficient to preserve the Court's subject matter jurisdiction.

Finally, as Philadelphia and Western Capital point out, the settlement agreement specifically contemplates that Philadelphia's financial obligations will be affected by the Court's determination regarding Chicago Title's obligations.  The settlement agreement contains a provision stating that Western Capital will refund a portion of the money paid by Philadelphia if Western Capital later receives that money from Chicago Title.

In sum, the Court concludes that Philadelphia's interest in a declaratory judgment regarding its rights and obligations and those of Chicago Title remains viable. The Court therefore denies Chicago Title's motion to alter or amend to the extent Chicago Title seeks a ruling that Philadelphia's claims are moot.

### 3. Merits of Philadelphia's equitable subordination claim

The Court concludes, however, that Philadelphia is not entitled to equitable subrogation.  Under the case that Philadelphia cites to set out the elements of this claim, there are three requirements for an equitable subrogation claim:  "(1) the defendant carrier must be primarily liable to the insured for a loss under a policy of insurance; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 323, 821 N.E.2d 269, 280 (2004).

Chicago Title argues first that Philadelphia, as excess insurer, "will never be called upon to defend [Western Capital] in the underlying case" and therefore cannot be considered to be liable for the "same loss" as Chicago Title, which has a complete defense obligation. Chicago Title's Resp. to Philadelphia's Mot. at 6-7. The Illinois Supreme Court, however, has rejected this argument, holding that under Chicago Title's approach, "an excess insurer would never be able to recover from a primary insurer under a subrogation or reimbursement theory because the parties insure different risks." *Home Insurance*, 213 Ill. 2d at 325, 821 N.E.2d at 281. Although the different roles of primary and excess insurers subject them to liability for different risks, the court distinguished "risk" from "loss" even if one insurer is "wholly liable for that loss as the primary insurer." *Id.* at 324, 821 N.E.2d at 281. Under this analysis, Philadelphia was secondarily liable for the same defense costs as Chicago Title, and the two insurers were therefore liable for the same loss.

The third element of a successful claim for equitable subrogation, however, is that the excess insurer's payments to the insured – in this case, Philadelphia's payments to Western Capital – must have "extinguished" the primary insurer's obligations to the insured. It appears from Philadelphia's arguments that the basis for its claim that it has fully compensated Western Capital for the defense costs at issue is the settlement agreement. The Court concludes that the settlement agreement did not extinguish Chicago Title's liability for the unpaid amounts. Both Philadelphia and Western Capital have continued to pursue Chicago Title for these amounts. In any event, Philadelphia's conclusion of a settlement agreement with its insured to keep itself off the hook for litigation costs does not resolve Western Capital's obligations to its

6

defense counsel and thus does not take either Western Capital or Chicago Title off the hook. Chicago Title's obligations to its insured have not been extinguished.

Although the record regarding which payments came from whom is less than crystal clear, it appears from Western Capital's submissions that Philadelphia made at least some payments directly to Schiff Hardin, the law firm representing Western Capital in the underlying litigation. Even if these payments could be said to have extinguished Chicago Title's liability for those particular amounts, however, Philadelphia's claim is foreclosed by another aspect of *Home Insurance.* The case indicates that an equitable subrogation claim may be waived if the excess insurer does not provide the proper notice to the primary insurer when making payments. Essentially, an excess insurer "desiring to reserve its rights against a second insurer must make this position clear in its correspondence with the second insurer." *Id.* at 327, 821 N.E.2d at 282. The excess insurer must inform the primary insurer that it is making payments that will extinguish the primary insurer's liability but that it intends to pursue reimbursement later. An insurer loses the right to pursue reimbursement when the "totality of [its] conduct was inconsistent with any claim that it would seek full reimbursement" later. *Id.*

Philadelphia makes no real argument that it provided the required notice, contending only that the waiver issue is addressed "on the face of the agreement as the parties entered the agreement with specific provisions regarding cooperation in this litigation and the allocation of a judgment by either party against [Chicago Title]." Philadelphia's Reply at 7. As Chicago Title points out, however, it was not provided with a copy of the agreement until nearly a year after it was signed. Philadelphia makes

7

no other argument and provides no other evidence that any other notice of this legal relationship was given to Chicago Title. The Court concludes that although Philadelphia is entitled to amend its complaint to add a claim for equitable subrogation, it cannot succeed on that claim. The Court therefore denies Philadelphia's motion for entry of monetary judgment.

**B.    Western Capital's claim**

Western Capital seeks summary judgment on two claims. First, it seeks a declaratory judgment regarding Chicago Title's obligations in the underlying lawsuit. This claim essentially concerns the same subject matter as Philadelphia's claim for declaratory judgment, on which the Court earlier granted summary judgment. As Western Capital points out, Chicago Title does not contest this request. The Court therefore grants summary judgment in Western Capital's favor on its claim for declaratory judgment. The scope of Chicago Title's defense obligations is as the Court indicated in its May 11, 2012 order. *See Philadelphia Indemnity*, 2012 WL 1658291, at *9-12.

Western Capital's second claim is a claim for damages for breach of contract. Chicago Title disputes this claim on essentially two grounds: it will result in an impermissible double recovery for Western Capital given its settlement with Philadelphia, and the amounts to which Western Capital claims it is entitled have been incorrectly calculated.

The Court agrees with Chicago Title that Western Capital is not entitled to recover twice for the same injury. Rather, it is entitled only to be made whole. Western Capital does not dispute this, pointing out that the settlement agreement, which is the

source of Chicago Title's dissatisfaction, expressly addresses this scenario. As the Court explained earlier, the agreement contains a provision establishing that Philadelphia will get a refund of any money that Western Capital receives from Chicago Title over and above the amount that has been billed by legal counsel less the amount paid by Philadelphia.

The primary case that Chicago Title cites in support of its claim that double recovery is impermissible contemplates this sort of situation. *Federal Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 296, 913 N.E.2d 43, 60 (2009). In that case, after considering a similar settlement between an insurer and an insured when another insurer was potentially on the hook, the Illinois Appellate Court remanded the case to the trial court to "make findings regarding whether the settlement, in conjunction with the damages awarded in this case, resulted in an impermissible double recovery." *Id.* The Court concludes that it has sufficient information to make just such a finding here. Pursuant to the provision that the Court has just discussed, the agreement will not result in this sort of double recovery. No case that Chicago Title cites indicates that the Court may not consider this information or that such a provision will not have this legal effect. Chicago Title's double recovery argument fails.

Chicago Title also challenges Western Capital's calculation of both the base amount of the defense costs and its interest calculation. In support of its calculation of defense costs, Western Capital has submitted the affidavit of Janet Johnson, an attorney at Schiff Hardin, who states that she has analyzed the invoices and has calculated the amounts. Chicago Title challenges the affidavit. First, Chicago Title maintains that Johnson was not disclosed. The Court concludes that this is not a

9

proper basis for striking the affidavit. It was reasonably foreseeable to any attentive litigant in this case that Western Capital would need to authenticate and explain attorney billing records through Schiff Hardin personnel and that, therefore, the substance of what Johnson states in the affidavit would be at issue. Under the circumstances, the non-disclosure is harmless.

Chicago Title next contends that certain aspects of Johnson's affidavit constitute improper opinion testimony. The Court need not address this challenge for reasons described later in this decision. *See infra* at 14 n.1.

Chicago Title also protests that Schiff Hardin's fees do not comply with Chicago Title's attorney billing guidelines. As Western Capital points out, however, Chicago Title does not argue that the guidelines were incorporated into the policy that Western Capital purchased in 2006. Rather, Chicago Title argues only that a copy of the guidelines was "provided to Schiff Hardin on November 10, 2008," which was after Schiff Hardin's work on the *Ridgeland* litigation had commenced, and that the guidelines themselves state that they are an "integral part" of Schiff Hardin's engagement. Chicago Title's Resp. to Western Capital at 6. Chicago Title provides no support for its indication that later-provided conditions can govern the amount to which an insured is entitled when those guidelines were not a part of the original insurance contract. The Court concludes that any alleged noncompliance with the billing guidelines does not render the fees legally unreasonable and does not otherwise affect the amount that Chicago Title owes.

In its motion to alter the judgment and its response to Western Capital, Chicago Title also disputes the dates for which it is obligated to provide defense costs. In its

previous decision, the Court determined that Chicago Title had an obligation to provide Western Capital with a complete defense only during the periods when there were claims or counterclaims "actively pending against Western Capital." *Philadelphia Indemnity*, 2012 WL 1568291, at *12. The Court concluded in that decision that the claims against Western Capital that gave rise to Chicago Title's duty to defend were dismissed on November 9, 2010 and re-pled on September 23, 2011 and that Chicago Title consequently had no obligation to pay Western Capital's defense costs for the intervening period. The parties refer to this as the "second blackout period." Chicago Title now asserts that the counterclaims were not, in fact, reasserted. It says that although the state court judge gave permission to assert the counterclaims, they were never re-filed, and the second blackout period therefore never ended.

In response, Western Capital notes that the *Ridgeland* defendants' motion requesting leave to file their second amended counterclaim included a copy of the proposed amended version. The state court judge's order granting the defendants' motion states that certain counterclaims "may be alleged solely for the purposes of preserving issues for appeal" and that "[a]ll Counter Defendants may answer or otherwise plead to the Second Amended Complaint on or before 30 days from the entry of this order." Western Capital's Resp. to Chicago Title Ex. C. The Court agrees with Western Capital that this language reflects that the counterclaims were in fact reasserted in the *Ridgeland* litigation, as the Court previously concluded. The Court therefore denies the remainder of Chicago Title's motion to alter the judgment.

Chicago Title also asserts that it should not be liable for Schiff Hardin's fees because they are unreasonable. In its response to Western Capital, Chicago Title

11

provides no legal support for this contention. It maintains only that "there is no evidence that market forces played any role" in a shift in one attorney's hourly rate over a three year period and that the fact that the total amount of fees incurred to date approaches the value of Western Capital's initially disbursed loan further reflects that the fees are unreasonable. Chicago Title's Resp. to Western Capital's Mot. at 6-7. Neither of these propositions would permit a reasonable fact finder to determine the requested fees are unreasonable.

To the extent that Chicago Title incorporates its arguments regarding unreasonableness from its response to Philadelphia's motion, those arguments primarily rely on Chicago Title's billing guidelines – which the Court has already discussed – and *Taco Bell*. In *Taco Bell*, one of the insurers maintained that Taco Bell, the insured, had incurred excessive defense costs. The Seventh Circuit was "unimpressed" with this contention, reasoning that Taco Bell had hired its lawyers while one of its insurers was "vigorously denying that it had any duty to defend – any duty, therefore, to reimburse Taco Bell." *Taco Bell*, 388 F.3d at 1075. "Because of the resulting uncertainty about reimbursement, Taco Bell had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." *Id.* at 1075-76. The Court concludes that a similar situation exists in the present case, because the disputed amounts represent fees for which both Chicago Title and Philadelphia continue to vigorously deny any duty to defend Western Capital. The prospect of reimbursement for Western Capital was at least as uncertain as it was for Taco Bell, providing a significant market incentive to minimize defense costs and

12

removing the necessity of close review of the fees charged.

Finally, Chicago Title disputes Johnson's calculations concerning three specific invoices. In the Court's previous opinion, it granted Chicago Title's request for summary judgment on Chicago Title's claim that it was not required to reimburse Western Capital for defense costs incurred in connection with two foreclosure cases brought regarding Western Capital's "Erie" and "Kenwood" properties. The Court concluded that Chicago Title's obligations covered only the *Ridgeland* litigation. In the three invoices at issue, Schiff Hardin billed for work regarding all three matters in a manner that rendered it difficult to determine precisely how much of the work covered each particular matter. In Johnson's affidavit, to which she does not attach the invoices at issue, she states that she made a reasonable effort to separate these costs and charge only for the amounts representing work on the *Ridgeland* litigation.

Chicago Title protests that neither it nor a fact finder can make a meaningful assessment of Johnson's effort to distinguish among the fees incurred for the various matters without viewing the underlying invoices in their entirety. The Court agrees. The accuracy of this aspect of Johnson's calculation cannot be determined on the current record.

This conclusion typically would require determination of this particular issue at a trial after presentation of further evidence. Western Capital vigorously maintains in its reply, however, that no trial is necessary. It maintains that if the Court determines that Western Capital cannot recover via its motion the amounts reflected in the disputed invoices, the Court nonetheless should grant summary judgment for Western Capital "albeit at a reduced amount" and "award such damages are supported by the record."

Western Capital's Reply at 7-8. The Court understands Western Capital to be saying that if the Court concludes that the motion papers are insufficient to permit recovery of the amounts in those invoices, it will forego its effort to collect those amounts and will be satisfied with a judgment for the remaining amounts due. Consequently, the Court grants summary judgment for Western Capital in the amount of $649,946.90, representing the amount it has paid to Schiff Hardin aside from the amounts reflected in the disputed invoices (a net total of $1,004,417.14), less the amount Chicago Title has already paid to Schiff Hardin ($354,470.24).[1]

With regard to interest, Chicago Title does not dispute that it is liable to Western Capital for interest at the rate of five percent per annum. Chicago Title claims, however, that Western Capital has incorrectly calculated the interest due. Western Capital has submitted, as Exhibit D to its motion, a spreadsheet that lists the amount of each invoice and includes a calculation of interest at five percent per annum from the date of the invoice. The spreadsheet then totals the principal amount due, subtracts the amount of the payments received from Chicago Title, and then adds in the total of the previously-calculated interest.

The Court agrees with Chicago Title that this method of calculation does not appear to account for the fact that Chicago Title's payment of some of the defense

---

[1] Because the Court has discounted the disputed affidavits and has calculated the base amount due in the manner Chicago Title suggests, the Court need not address Chicago Title's contention that Johnson's affidavit contains impermissible opinion testimony. See Chicago Title's Resp. to Western Capital's Mot. at 6 ("[P]aragraphs 8-15 of Ms. Johnson's affidavit constitute undisclosed and improper opinion testimony. Thus, those paragraphs should be stricken, so that the only amount at issue allegedly due from Schiff Hardin is $1,004,417.14.").

14

costs during the litigation would have reduced the amounts due under certain invoices and therefore would have reduced the interest due on those amounts. As a result, the Court finds that Western Capital is entitled to interest at five percent per annum, but concludes that the interest due must be recalculated in a way that will account fully for any payments by Chicago Title that reduced the principle amount due. That said, this particular dispute, which simply requires making the appropriate mathematical calculation, does not amount to a genuine issue of material fact that requires a trial.

## Conclusion

For the reasons stated above, the Court grants Western Capital's motion for summary judgment in part [docket no. 279], denies Philadelphia's motion for monetary judgment [docket no. 268], and denies Chicago Title's motion to alter or amend the Court's May 11, 2012 memorandum opinion and order [docket no. 283]. The trial date of June 11, 2012 case is vacated. Counsel are, however, directed to appear on that date at 9:30 a.m. to discuss preparation of an appropriate form of judgment embodying the Court's rulings on all of the parties' claims.

                                              s/ Matthew F. Kennelly
                                              MATTHEW F. KENNELLY
                                              United States District Judge

Date: June 10, 2012