# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Philadelphia Indemnity Insurance Company, | |
| Plaintiff, | |
| v. | Case No. 09 C 7063 |
| Chicago Title Insurance Company and Western Capital Partners, LLC, | Judge Matthew F. Kennelly |
| Defendants. | |

## CHICAGO TITLE INSURANCE COMPANY'S
## MOTION TO ENTER JUDGMENT

Chicago Title Insurance Company ("CTI"), by its undersigned attorneys, moves for the Court to enter judgment in this case in favor of Western Capital Partners, LLC ("WCP") in the form attached hereto as Exhibit A. In support of its Motion, CTI states:[1]

1. In this Court's Memorandum Opinion and Order granting WCP's Motion for Summary Judgment, Dkt. 303 ("Order"), this Court agreed with CTI that WCP is not entitled to recover twice for the same injury, but is entitled only to be made whole. (*Id.* at p.8).

2. In a May 22, 2012 email from WCP's counsel Joseph J. Novak to Richard Waris and Davis Larson, the counsel for Philadelphia Indemnity Insurance Company ("PIIC"), Mr. Novak, on behalf of WCP, states:

> We had a lengthy conversation this afternoon and WCP has made it clear that, if it can recover $428,857.83 from CTI tomorrow, ***which is the amount needed to make WCP whole under the PIIC Settlement Agreement,*** then we are inclined to settle.

---

[1] By submitting this proposed judgment order, CTI does not concede, for purposes of appeal, that WCP is entitled to judgment in its favor in any amount or waive its arguments that its duty to defend should be controlled by the unambiguous language of exclusion 4(a) of its title insurance policy or any other argument made in its summary judgment motion or responses.

(CTI Trial Ex. 96) (emphasis supplied). A copy of this CTI trial exhibit is attached as Exhibit B.

3. This admission by WCP as to its "make whole" number should be the basis for the judgment amount, rather than the $649,946.90 amount this Court stated in its Order (at p.14). The $649,946.90 amount is inaccurate, because it does not account for CTI's payment of $15,788 directly to WCP (Adams Aff. ¶3, Dkt. 279-3), which when added to the amount CTI has paid to Schiff Hardin of $354,470.24 (Dkt. 303, p.14), amounts to $370,258.24 that WCP admits is the total payments that CTI has made to date. (WCP Motion for Summary Judgment, Dkt. 279, p.4, ¶9). This calculation of an undisputed amount reduces the proposed judgment amount to $634,158.90. Thus, when all amounts CTI has paid to or on behalf of WCP are taken into account, the net amount of $634,158.90 would amount to a double payment to WCP of $205,301.07, exclusive of interest, over WCP's admitted "make whole" number of $428,857.83.

4. Accordingly, CTI asks that this Court enter judgment in favor of WCP and against CTI in the amount of $428,857.83, WCP's "make whole" number, plus pre-judgment interest.

5. In its Order, this Court nonetheless concluded that the Settlement Agreement between WCP and PIIC would preclude any double recovery by WCP, because "Philadelphia will get a refund of any money that Western Capital receives from Chicago Title over and above the amount that has been billed by legal counsel less the amount paid by Philadelphia." (Dkt. 303, p.9).

6. CTI disputes that the reimbursement formula in the Settlement Agreement is relevant to whether WCP is made whole. WCP claims in its motion for summary judgment that the payment it received from PIIC was a "loan." Surely, if WCP had an agreement with a bank that any recovery in this case over its actual damages would be used to repay its bank loan, it

would be obvious that allowing WCP to recovery more than its "make whole" amount would result in a double recovery benefiting WCP, even though it would not retain all the funds recovered. There is no reason why this Court should treat WCP's "loan" from PIIC any differently than it would treat a bank loan.

7. In fact, allowing PIIC to recover under the Settlement Agreement would be inconsistent with this Court's ruling that PIIC waived any equitable subrogation claim, by effectively requiring CTI to fund WCP's reimbursement to PIIC even though a lesser amount would make WCP whole.

8. Furthermore, the Settlement Agreement methodology, if expressly followed, would lead to a significant double recover by WCP.

9. The reimbursement formula from WCP to PIIC is found in paragraph 3 of the Settlement Agreement. This paragraph provides, in relevant part, that:

> It is the intent of this Agreement that PIIC pay WCP an amount equal to 50% of the total Litigation Costs (the "PIIC Cost Contribution" and for WCP to reimburse PIIC an amount equal to any damages received from CTI that exceed the remaining 50% of the total litigation costs not paid by PIIC. Therefore, if WCP obtains a final judgment against CTI, or WCP settles with CTI, and CTI pays WCP said judgment or settlement, and if such amount, coupled with payments already made by CTI exceeds the PIIC Cost Contribution paid by PIIC pursuant to paragraph 2, then WCP shall reimburse PIIC the amount received from CTI that exceeds the PIIC Cost Contribution. No obligation to reimburse PIIC shall arise if WCP does not receive payment of actual damages from CTI exceeding the PIIC Cost Contribution pursuant to paragraph 2.

(Settlement Agreement, ¶3). (It appears that the reference to paragraph 2 should in fact be paragraph 3, because the term "PIIC Cost Contribution" is not defined until paragraph 3).

10. According to WCP's summary judgment motion, Exhibit B, the Affidavit of Janet Johnson, the total litigation costs incurred by the *Ridgeland East* lawsuit as of May 11, 2012, and

including the four invoices that were reallocated from the foreclosure lawsuit to the *Ridgeland East* lawsuit, were $1,370,834.92. (Dkt. 279-2, p.7 of 9). The PIIC Cost Contribution would be 50% of this amount, or $685,417.46. If, for example, this court were to enter a judgment in the proposed amount of $649,946.90, the total amount paid by CTI to WCP would be the judgment amount, plus CTI's prior payments of $370,258.24, or $1,020,205.14. PIIC would then receive the amount received from CTI that exceeds the PIIC Cost Contribution. This amount is calculated by subtracting the PIIC Cost Contribution of $685,417.46, (50% of PIIC's Total Litigation Costs) from CTI's total payments of $1,020,205.14, which equals $334,787.68. This is the amount that would be reimbursed to PIIC.

11. WCP would then keep both $685,417.46, the remainder of CTI's payment after calculating PIIC's reimbursement amount, plus the $767,935.80 previously paid to or on behalf of WCP by PIIC, for a total of $1,453,353.26, which is $82,518.34 more than WCP's Total Litigation Costs of $1,370,834.92. Based on this example, even if the reimbursement formula in the Settlement Agreement is taken into account, WCP would still obtain a double recovery, contrary to longstanding Illinois Supreme Court precedent.

12. In *Popovich v. Ram Pipe & Supply Co., Inc.*, 80 Ill.2d 203 (1980), the Court considered the appeal of an intervenor Reliance Ins., which was a liability insurer of one of the defendants. Reliance, in exchange for a covenant not to sue Reliance's insured, "loaned" the plaintiff $20,000, with repayment of the $20,000 advanced to be made "only in the event the plaintiff recovers judgment in excess of $20,000 from remaining defendants and only then in the amount of such excess, up to and including the amount advance." (*Id*. at 204). The Supreme Court held that "[t]o the extent that the agreement of intervenors and plaintiff would allow

double recovery, we refuse to give it that effect, regardless of the intentions of the contracting parties." (*Id.* at 209).

13. The reimbursement provision of the Settlement Agreement between WCP and PIIC (paragraph 3) is strikingly similar to that in *Popovich*. Therefore, because the Settlement Agreement would allow WCP to obtain a double recovery, it should not be considered in calculating WCP's damage award.

14. Accordingly, to insure both that WCP is made whole and that it does not receive a double recovery, this court should enter the proposed Judgment Order attached as Exhibit A, in favor of WCP in the amount of $428,857.83.

15. Furthermore, the conflict in the Settlement Agreement between PIIC's unqualified obligation to pay 50% of WCP's defense costs in the *Ridgeland East* litigation going forward, and this Court's ruling that CTI is obligated to provide a full defense to WCP in that same litigation, gives rise to a potential further double recovery by WCP. If CTI pays 100% of the defense costs and WCP makes a demand on PIIC to honor its unqualified commitment to pay 50% of WCP's defense costs going forward, WCP could be more than made whole. Accordingly, to avoid a double recovery while insuring that WCP is made whole, this Court should rule that PIIC and CTI each bear responsibility for 50% of WCP's legal fees and expenses in the *Ridgeland East* litigation going forward, so long as any counts covered by CTI's policy are alleged in the *Ridgeland East* litigation.

WHEREFORE, CTI prays that this Court grant its Motion, enter the proposed Judgment Order attached as Exhibit A as the Judgment in this case and grant such other and further relief as the Court deems just.

Dated:  June 12, 2012                                    Respectfully submitted,

                                                         **Chicago Title Insurance Company**

                                                        By:  s/ Cary E. Donham
                                                                  One of its Attorneys

Jack J. Hagerty (ARDC No. 6205293)
Cary E. Donham (ARDC No. 6199385)
Sherri Thornton-Pierce (ARDC No. 6285507)
Brett Nolan (ARDC No. 6256972)
SHEFSKY & FROELICH LTD.
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:   (312) 527-4000
Facsimile:   (312) 527-4011
Email:       jhagerty@shefskylaw.com
             cdonham@shefskylaw.com
             sthornton@shefskylaw.com
             bnolan@shefskylaw.com                          1213727_1.DOCX